IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEATHER LYNN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H – 03 – 4289 |
| | § | |
| THE HOME DEPOT, INC. and BLACK | § | |
| & DECKER (U.S.), INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Defendants have filed a Motion to Exclude Expert Testimony (Doc. #30). For the following reasons, the Motion is **GRANTED**.

**I.     BACKGROUND**

Plaintiff seeks to hold Defendants liable for the alleged injuries she sustained as a result of coming into contact with a weed eater. On March 13, 2003, while shopping in a Home Depot store, Plaintiff's path was obstructed by a Black & Decker grass hog weed eater. In maneuvering past the obstacle, Plaintiff came into contact with the weed eater wherein it activated and caused the twine to hit the tip of her right thumb (hereinafter referred to as the "weed eater incident").

Plaintiff saw her family physician the following day because her thumb was swollen. About one month later, she returned to her family physician and complained of numbness in her thumb, but denied that there was any swelling or redness. Plaintiff was referred to Dr. Budoff. Dr. Budoff's records from Plaintiff's first visit indicate that she lacked full range of motion in her thumb, by one centimeter, and had decreased sensation to light touch over the thumb.

Plaintiff's pain was predominately in the area of her right wrist. Dr. Budoff diagnosed her as having intersection syndrome.

Plaintiff's second visit to Dr. Budoff was in May 2003; Dr. Budoff's records show that Plaintiff had full range of motion of all of her right-hand fingers, including her thumb, there were no complaints of pain in the thumb, and no indication of any swelling in the thumb. Plaintiff was a little tender over her radial tunnel. Dr. Budoff concluded that her intersection syndrome had improved, but that she had radial tunnel syndrome and possible tennis elbow.

When Plaintiff visited Dr. Budoff in June he determined that Plaintiff still had intersection syndrome and radial tunnel syndrome, and had developed lateral tennis elbow. In July, Dr. Budoff recorded that Plaintiff's intersection syndrome had improved, but that she still had radial tunnel syndrome and lateral tennis elbow. On September 16, 2003, six months after the weed eater incident, Plaintiff visited Dr. Budoff again. This time, Dr. Budoff diagnosed Plaintiff as having right trigger thumb. In March 2004, Dr. Budoff recorded that Plaintiff was developing problems in her right index finger.

Plaintiff has offered Dr. Budoff as a medical expert who will testify that her trigger thumb, tennis elbow, radial tunnel syndrome, and intersection syndrome were all caused by the weed eater incident. Defendants seek to have Dr. Budoff's testimony excluded because it does not satisfy the requirements of the Federal Rules of Civil Procedure for expert testimony.

**II.     STANDARD**

Under Texas law, Plaintiff bears the burden of proving, "to a reasonable degree of medical certainty, based on a reasonable medical probability and scientifically reliable evidence," that the weed eater incident caused the injuries she is claiming in this case. *Black v.*

2

*Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999). Plaintiff offers Dr. Budoff as a medical expert to prove causation.

In *Kumho Tire Co. v. Carmichael,* the Supreme Court held that district courts may apply the *Daubert*[1] analysis to determine the reliability of experts generally:

> *Daubert*'s general holding – setting forth the trial judge's general "gatekeeping" obligation – applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is "flexible," and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.

526 U.S. 137, 141-42 (1999) (citation omitted). The Fifth Circuit specifically held that *Daubert* applies to medical experts. *Food Lion,* 171 F.3d at 310 (stating that *Kumho* supported the Fifth Circuit en banc decision in *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998), that the *Daubert* analysis governs expert medical testimony).

In *Daubert* and *Kumho*, the Court listed specific factors that a trial judge may consider when determining the admissibility of expert testimony. Those factors are:

- Whether a "theory or technique . . . can be (and has been) tested";
- Whether it "has been subjected to peer review and publication";
- Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and
- Whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*Kumho*, 526 U.S. at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). The goal of *Daubert* is to "ensure the reliability and relevancy of expert testimony." *Id*. at 152. The *Daubert* inquiry is a flexible one, however, and these factors "do *not* constitute a 'definitive checklist or test.'" *Id*. at

---

[1] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

150 (quoting *Daubert*, 509 U.S. at 593).  Using the *Daubert* factors as guidance, the Court finds and holds that Dr. Budoff's expert testimony does not satisfy the Federal Rules of Evidence for admissibility and should be excluded.

### III.    ANALYSIS

Dr. Budoff's expert opinion is that the weed eater incident caused Plaintiff to develop intersection syndrome one month after the incident; radial tunnel syndrome two months after the incident; lateral tennis elbow three months after the incident; and, finally, trigger thumb six months after the incident.  His conclusion that these injuries were caused by the weed eater primarily rests on two premises:  (1) his general hypothesis that injuries in the finger can lead to weaknesses further up the arm; and (2) Plaintiff did not experience any of these problems prior to the weed eater incident.

As Dr. Budoff himself admits, although he believes that localized injuries of the hand can lead to other problems along the arm, he cannot prove it; there are a number of theories as to why this occurs, none of which can be proved.  Dr. Budoff explains that this is an area of developing medicine and there is little, if any, literature on the hypothesis.  Dr. Budoff is currently trying to do some research and inform the medical community about this phenomenon.

Dr. Budoff's deposition testimony makes clear that none of the *Daubert* factors have been met.  His theory cannot be tested, has not been subjected to peer review and publication, and does not enjoy general acceptance within the medical community; in fact, the medical community is not even aware of the theory.  Dr. Budoff's conclusion that the weed eater incident caused Plaintiff to develop intersection syndrome, radial tunnel syndrome, lateral tennis elbow, and trigger thumb, is based on his generalized reasoning that "the hand is connected to the wrist, . . . and there are no isolated injuries in the arm" because "[e]verything is connected."  Pl.'s

4

Resp. to Defs.' Mot. to Exclude Expert Test., Ex. A at p. 53.  This opinion is simply not "the product of reliable principles and methods."  Fed. R. Evid. 702.

Furthermore, Dr. Budoff's methodology does not satisfy "any other factors operating in favor of admissibility which could outweigh those identified in *Daubert*."  *Food Lion*, 171 F.3d at 311.  Dr. Budoff recognizes that there are other possible causes of some of Plaintiff's injuries, such as routinely lifting children and hypothyroidism – both of which affect Plaintiff – but dismisses these possible causes because Plaintiff never experienced any problems before the weed eater incident.  Dr. Budoff reasons that the weed eater incident must have caused the injuries because it is unlikely that these injuries could suddenly develop without some instigating cause.  Yet, Dr. Budoff later explains that Plaintiff's index finger injury, which he agrees is unrelated to the weed eater incident, was not associated with any particular event, "[i]t just sort of happened."  Pl.'s Resp. to Defs.' Mot. to Exclude Expert Test., Ex. A at p. 116.

Dr. Budoff's methodology is inconsistent.  According to Dr. Budoff, Plaintiff's intersection syndrome, radial tunnel syndrome, lateral tennis elbow, and trigger thumb – all of which he classifies as "not uncommon things" – are unlikely to have just suddenly developed based on Plaintiff's lifestyle and medical history; but Plaintiff's index finger injury – which he states is a "very unusual disorder" – "just sort of happened" without any traumatic event.  *Id*. at 116, 119.

Dr. Budoff's theory is nothing more than an untested, unproven, hypothesis.  Dr. Budoff inadequately dismisses, or fails to consider, other possible causes of Plaintiff's afflictions, and concludes, based on a temporal relationship, that the weed eater incident must have caused the injuries because the injuries occurred after the incident.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to

5

existing data only by the ipse dixit of the expert." *Kumho*, 526 U.S. at 157 (quoting *Ge v. Joiner*, 522 U.S. 136, 146 (1997)).

The Court's task is to determine whether Dr. Budoff's methodology uses medical evidence to connect the weed eater incident to the development of intersection syndrome, radial tunnel syndrome, lateral tennis elbow, and trigger thumb. Dr. Budoff cannot prove his hypothesis that a minor injury to the tip of the thumb caused the resulting injuries along Plaintiff's arm up to, and including, her elbow. Dr. Budoff's "use of a general methodology cannot vindicate a conclusion for which there is no underlying medical support." *Food Lion*, 171 F.3d at 314.

## IV.  CONCLUSION

Defendants' Motion to Exclude Expert Testimony (Doc. #30) is **GRANTED**. Dr. Budoff's theory of causation is inadmissible.

IT IS SO ORDERED.

SIGNED this 10th day of June, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**